UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| NOAH JAMES GOLDSMITH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00136-SRC |
| | ) | |
| CARL HEFFNER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum and Order**

Self-represented plaintiff Noah James Goldsmith brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights.  The matter is now before the Court upon the motion of plaintiff for leave to proceed in forma pauperis, or without prepayment of the required filing fees and costs.  Plaintiff was an incarcerated prisoner at Stoddard County Jail when he filed this complaint on September 14, 2021.  However, the Court received a change-of-address notice from plaintiff on January 21, 2022, indicating that he had been released from jail.  Because plaintiff was released from confinement shortly after filing the instant action, the Court grants his request to proceed in forma pauperis and will not assess an initial partial filing fee.  *See* 28 U.S.C. § 1915(a)(1).  Furthermore, upon review, the Court concludes it must dismiss this case for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted.  An action is frivolous if it "lacks an arguable basis in either law or fact."  *Neitzke v. Williams*, 490 U.S.

319, 328 (1989).  An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense.  *Id*. at 679.  The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).  This Court must liberally construe complaints filed by laypeople.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).  Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914–15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

2

## The Complaint

On September 14, 2021, self-represented plaintiff Noah James Goldsmith, a pretrial detainee at the Stoddard County Jail filed his complaint pursuant to 42 U.S.C. § 1983. Plaintiff named the Stoddard County Jail Administrator, Kris Craft, as a defendant in this action, as well as Carl Heffner, the Stoddard County Sheriff. Both defendants were named in their official and individual capacities.

Plaintiff presents the following allegations. He asserts that from July 26, 2021, through July 28, 2021, he was on Covid lockdown at the Stoddard County Jail. He claims that "it became known that there was a massive outbreak of Covid in the County Jail, with roughly 90% of the inmates detained testing positive for Covid."

Plaintiff complains that inmates were placed in "lockdown" with 3 to 4 inmates to a cell, in cells designed for two inmates, for roughly three days with no showers, and because the cells were crowded some inmates had to sleep on the floor. Plaintiff does not state who placed the inmates on "lockdown" or was responsible for the conditions in the cells. He does not explain what exactly occurred during lockdown, such as how often inmates were allowed to leave the cells. Plaintiff states that he tested negative for Covid and was housed with inmates who had also tested negative; however, some of the inmates he was housed with eventually tested positive and had to be removed from his cell. Plaintiff does admit that he was provided with masks, along with daily vitamins and "Z-packs." Plaintiff asserts that defendant Craft charged him for "medicine [he] did not ask for."

Plaintiff further alleges that the inmates were not provided with cleaning supplies for the cells during this three-day time-period. Although he claims that he believes that there is "mold"

3

everywhere in the Jail, he does not indicate how this affected him. Similarly, he does not indicate that there were items in the cell during the three-day lockdown that needed to be cleaned and that defendants Craft and Heffner were aware of such issues.

Plaintiff also states in a conclusory manner that there are "no sprinkler systems." Plaintiff does not provide any factual allegations relative to how the lack of cleaning supplies, mold, or sprinkler systems allegedly affected his incarceration at the Stoddard County Jail. Plaintiff also does not indicate which of the defendants was responsible for any of the aforementioned issues.

Plaintiff asserts that he filed "several general requests, grievances, and grievance appeals" asking for quarantine measures to be taken. He also alleges that he asked that he receive the Covid-19 vaccine. Plaintiff, however, does not indicate what types of quarantine measures he sought, or who he asked for "quarantine measures" and the vaccine. Plaintiff states that his requests were denied.

Plaintiff states that Kris Craft told him "he was already exposed to it so deal with it." Plaintiff does not provide context relative to this statement from Craft. Plaintiff asserts that Sheriff Heffner called him to a room by himself and told him "to go lay back in [his] cell and shut [his] … mouth." Plaintiff claims that Heffner told him to do so because he kept asking for preventative measures besides masking, such as the vaccine. He asserts that Kris Craft also "threatened him" that he could be put in B Max "as a quarantine measure," which plaintiff took as a punishment because it would constitute a "loss of privileges."

Plaintiff alleges that he asked the Stoddard County Court for a bond hearing, as several other inmates at the Jail were provided bond. However, despite having a Class D non-violent

4

felony, he was unable to get a bond hearing.  Plaintiff does not explain what his inability to get a bond hearing has to do with defendants Craft and Heffner.  Plaintiff asserts that the stress of the pandemic and being housed with Covid-positive inmates caused him to suffer from migraines and mental stress.  He seeks damages in an amount exceeding one million dollars.

## Discussion

After carefully reviewing the complaint and giving it the benefit of a liberal construction, the Court concludes it must dismiss the complaint.

### A. Official Capacity Claims

Plaintiff named the Stoddard County Jail Administrator, Kris Craft, as a defendant in this action, as well as Carl Heffner, the Stoddard County Sheriff.  Both defendants are alleged to be employees of Stoddard County.

A "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

A local governing body such as Stoddard County can be sued directly under 42 U.S.C. § 1983.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  The county cannot be held liable, however, simply because it employs a tortfeasor.  *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality .

. . cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of Stoddard County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

6

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Here, plaintiff has not alleged any facts supporting the proposition that his constitutional rights were violated due to an unconstitutional policy, custom, or failure to train on the part of Stoddard County. With regard to policy, plaintiff's allegations identify no Stoddard County "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" causing him harm. While he alleges the Jail's preventative measures and containment processes were inadequate, he fails to demonstrate they were the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Significantly, plaintiff does not identify or describe a specific policy. To the contrary, plaintiff generally alleges a lack of preventative

7

measures and quarantine processes.  Plaintiff's conclusory allegations do not indicate that the Jail's reaction to Covid was the result of deliberate choices made by municipal officials.

As to an unofficial custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" Stoddard County employees, much less that Stoddard County officials were deliberately indifferent to or tacitly authorized such misconduct.  Plaintiff's facts amount to a vague allegation that the quarantine processes are insufficient at the Stoddard County Jail, but he provides no support for the contention that his constitutional rights were violated, nor does he demonstrate a pattern of unconstitutional acts.

Likewise, plaintiff has not demonstrated the existence of a failure to train or supervise because he has not alleged a "pattern of similar constitutional violations by untrained employees."  Rather, as discussed above, plaintiff's general complaints about quarantine processes at the Stoddard County Jail do not indicate a pattern of constitutional violations by employees of Stoddard County.

For the reasons discussed above, plaintiff has failed to allege facts showing that Stoddard County violated his constitutional rights due to a policy, custom, or failure to train.  Thus, to the extent that Stoddard County can be considered defendant's employer, the claim against it is subject to dismissal.  *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### B. Individual Capacity Claims

Plaintiff has named two individual defendants in this action: Stoddard County Sheriff Carl Heffner, as well as Jail Administrator Kris Craft. The substance of plaintiff's complaint concerns three allegations: (1) his grievances were insufficiently handled; (2) the Jail failed to institute proper preventative measures and containment processes to manage the Covid-19 pandemic; and (3) the Jail lacked proper conditions of confinement during the lockdown period.

Plaintiff's conclusory allegations regarding the grievance procedures fail to state a claim. It is well established there is no federal constitutional liberty interest in having state officers follow state law or in having prison officials follow prison regulations with regard to a grievance procedure. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability). Also, there is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a prison official's failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate); *see also Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (prisoners do not have a constitutionally protected right to a prison grievance process). Therefore, if a state elects to provide a grievance mechanism, violations thereof will *not* give rise to a § 1983 claim. For these reasons, plaintiff's claims against defendants Craft and Heffner as to the handling of his grievances and complaints fail to state a claim upon which relief may be granted.

Second, plaintiff's assertions regarding the Jail's quarantine procedures during the Covid-19 pandemic, as well as his conditions of confinement claims, fail to state a claim upon which relief may be granted because plaintiff has failed to make any specific allegations against defendants with respect to these claims.

Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights.  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

In the instant action, plaintiff has not set forth any facts indicating that defendants Carl Heffner or Kris Craft were directly involved in or personally responsible for the alleged violations of his constitutional rights as to the containment of Covid-19 within the Jail or the alleged lack of preventative measures relating to Covid.  He does not allege they were responsible for the three days he was in lockdown from July 26, 2021, through July 28, 2021, with those who first tested negative and later tested positive for Covid.  He has also not alleged that defendants were responsible for failing to administer Covid vaccines or grant plaintiff bond so that he could quarantine at home.  At most, plaintiff asserts that he was upset about comments made to him by Craft and Heffner about his request for preventative measures.  However, "mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983").

Additionally, plaintiff admits that he was provided masks during his time at the Jail, and that he was housed with inmates who also tested negative for Covid. He has acknowledged that a quarantine in "B Max" was offered to him. However, plaintiff refused this quarantine measure because he took it as a "loss of a privilege." For these reasons, the complaint fails to state a claim upon which relief can be granted against defendants Craft and Heffner in their individual capacities with respect to plaintiff's claims related to Covid-prevention measures. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).

Similarly, plaintiff has failed to allege that defendants Craft and Heffner were responsible for celling 3 to 4 inmates in a two-man cell from July 26, 2021, through July 28, 2021, during the "lockdown." He has also failed to allege that defendants were responsible for failing to provide the inmates cleaning supplies for those three days, the alleged mold throughout the Jail, or inadequate "sprinkler systems."

Even if plaintiff sufficiently alleged defendants' personal responsibly for these claims, he fails to state adequate-conditions-of-confinement claims under the Eighth Amendment. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and . . . 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) and *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The United States Supreme Court has determined that prisoners have a

11

protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

At all relevant times, plaintiff was a pretrial detainee, so his constitutional claims fall within the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). The Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). Two ways exist to determine whether conditions rise to the level of punishment. First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If conditions are arbitrary or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id*. "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

In determining whether pretrial detention is unconstitutionally punitive, the United States Court of Appeals for the Eighth Circuit has applied the deliberate-indifference standard. *See Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *see also Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("To succeed on a claim under the Due Process Clause of the

Fourteenth Amendment, a pretrial detainee . . . must show the defendant official was deliberately indifferent to his rights"). In particular, the Eighth Circuit has explained that this standard applies when "the governmental duty to protect at issue…is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and well-being." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To that end, the Eighth Circuit has held "that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." *Id*. at 345.

As the Supreme Court has "emphatically (and repeatedly) declared," "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Butler*, 465 F.3d at 345 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). For plaintiff to state a claim of deliberate indifference, he has to show more than just negligence. He has to show that (1) objectively, he was exposed to a safety risk that created an unreasonable risk of serious harm to his health; and (2) subjectively, that defendants actually knew of and recklessly disregarded this substantial risk of serious harm. *Id.* Plaintiff's allegations do not meet this constitutional threshold. His allegations fail to meet the objective prong of showing that he was exposed to a safety risk that created an unreasonable risk of serious harm to his health.

Plaintiff complains about the Jail's preventative measures and failure to provide vaccines, but these allegations do not state constitutional violations. He asserts that he was placed on lockdown from July 26, 2021, through July 28, 2021, because "it became known that there was a massive outbreak of Covid in the County Jail, with roughly 90% of the inmates detained testing

13

positive for Covid." He acknowledges that he was provided with masks, and he was offered a separate quarantine area, even though he refused that area because he associated it with a lack of privileges. He also indicates that because he tested negative, he was first placed with other inmates in lockdown who also tested negative. Last, plaintiff does not indicate that he ever tested positive for Covid-19 or that he was denied a test for Covid when he was experiencing symptoms. *See e.g.*, *Garner v. Keen*, No. 4:20-cv-1690, 2021 WL 1923507, *5 (E.D. Mo. May 13, 2021) (dismissing complaint on initial review where inmate complained about quarantine measures but had not contracted virus).

The fact the Stoddard County Jail engaged in screening inmates and "separating and quarantining COVID positive patients indicates that the [institution] is not being deliberately indifferent to the needs of the inmates that are not positive." *Engel v. CO1*, No. 4:20-cv-1908, 2021 WL 1198061, at *3–4 (E.D. Mo. Mar. 30, 2021); *see also Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (explaining that the quarantining of "any inmate exposed to Covid-19 is strong evidence that [the defendants] are responding reasonably to the risk posed by the virus").

Likewise, plaintiff's overcrowding allegations are conclusory and fail to set forth facts that state a claim as a matter of law. His claim seems to assume that inmates are not allowed to sleep on a cell floor. Triple-celling is not in and of itself unconstitutional. *McCree v. Sherrod*, 408 F. App'x 990 (7th Cir. 2011); *Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008); *Strickler v. Waters,* 989 F.2d 1375 (4th Cir. 1993). Rather, triple-celling is only unconstitutional if it leads to "deprivations of essential food, medical care, or sanitation." *Cody v. Hillard*, 820 F.2d 912,

914 (8th Cir. 1987).  Plaintiff must show that triple- or quadruple-celling deprives him "of the minimal civilized measures of life's necessities. . . ." *Morris*, 601 F.3d. at 809.

To that end, plaintiff does not allege any facts to demonstrate that sharing a cell rises to the level of a violation of his constitutional rights.  For example, he makes no allegation that he was forced to sleep under a bunk or that he was forced to sleep near the toilet.  He also does not allege that sharing a cell affected his health or his hygiene.  Although he makes conclusory remarks that there was mold all over the Stoddard County Jail and that the Jail had inadequate sprinklers, these remarks cannot suffice to state constitutional violations.  Plaintiff does not indicate that he was in any way harmed by the alleged mold or purported lack of sprinklers.  Similarly, he has not alleged that the purported lack of cleaning supplies in the cell for three days in some way harmed him.  *See Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981) ("a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts").

Last, plaintiff asserts that defendant Craft unlawfully charged him for "medicine [he] did not ask for."  Plaintiff does not indicate what the medicine was; however, he listed in his complaint that all inmates at the Stoddard County Jail were given vitamins and Zithromax.  Plaintiff is asserting a deprivation of his personal property by defendant Craft; however, such a claim does not arise under the Constitution.

"When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004).  Missouri provides

adequate post-deprivation remedies, *see Orebaugh v. Caspari*, 910 F.2d 526, 527 (8th Cir. 1990), because plaintiff "may use [Missouri] state-law remedies to recover money that was improperly deducted from his prison account." *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001); *see also Taylor v. Combs*, 2007 WL 3028255, at *1 (W.D. Mo. Oct. 15, 2007) (dismissing, at section 1915A review, prisoner's claim "challenging removal of his inmate account monies" because such claims "should be brought in state court" (citing *Moore*, 266 F.3d at 929–33)).

## Conclusion

The Court dismisses plaintiff's action against defendants and finds that no amendment to the complaint could cure the complaint's deficiencies. Accordingly, the Court grants plaintiff's [2] motion to proceed in forma pauperis and denies as moot plaintiff's [3] motion to appoint counsel. The Court dismisses this case pursuant to 28 U.S.C. 1915(e) and certifies that an appeal from this dismissal would not be taken in good faith.

So Ordered this 18th day of February 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE